UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMIE JAMES NORMAN, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MARTEN TRANSPORT, LTD., ) <br> and RICHARD J. HAIGHT ) <br> Defendants. ) | Case No. 4:08CV01695 AGF |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Jimmie James Norman Jr.'s motion to preclude the testimony of Defendants' expert witness, Dr. Craig Beyer. (Doc. 43.) Plaintiff asserts that Dr. Beyer's proposed testimony (1) does not meet the standards for admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and (2) improperly invades the province of the Court and the jury.

### Background

This lawsuit involves a collision between two semi-trailer rigs at a truck stop in Warrenton, Missouri, from which Plaintiff alleges he sustained damages to his neck and lower back. Defendants retained Dr. Beyer, an orthopedic surgeon, to perform an independent medial examination ("IME") of Plaintiff, pursuant to Federal Rule of Civil Procedure 35. Following his examination of Plaintiff, Dr. Beyer generated a report consisting of a review of Plaintiff's medical records, the police report and film studies of the collision, and his written IME. In his report, Dr. Beyer renders opinions regarding the

amount of force involved in the impact, the medical causation of Plaintiff's injuries, and the truthfulness of Plaintiff.

## Legal Standard

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Weisgram v. Marley Co.*, 169 F.3d 514, 523 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." *Clark ex rel. Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) (quoting *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *First Union Nat'l. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) (citing *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001)).

The trial court, however, is charged with the duty to ensure that testimony admitted under Rule 702 "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Defendants, as the proponents of the challenged

expert evidence here, bear the burden of proving by a preponderance of the evidence that the conditions of admissibility exist. *Lauzon*, 270 F.3d at 686.

Generally, a court should exclude an expert opinion "only if it is so fundamentally unsupported that it cannot help the factfinder." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (citation omitted). Expert testimony should be admitted if it is based on sufficient facts, it is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Court's inquiry is a flexible one and must be "tied to the facts of the particular case." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

## Discussion

**Dr. Beyer's Opinion Regarding the Forces in the Collision**

Plaintiff first moves to exclude Dr. Beyer's testimony that the collision which allegedly gave rise to Plaintiff's injuries was a low energy event. Plaintiff argues that Dr. Beyer is not qualified to render such an opinion because his education and training give him no basis for that opinion. Specifically, Plaintiff notes that Dr. Beyer has not earned any degrees in the field of biomechanical engineering and argues that Dr. Beyer's only experience relevant to his opinion consists of having frequented a truck stop to gas up his car. Plaintiff also argues that the methodology upon which Dr. Beyer bases his opinion is unreliable.

The Eighth Circuit has held that "Rule 702 does not rank academic training over demonstrated practical experience." *Fox v. Dannenberg*, 906 F.2d 1253, 1255-56 (8th

3

Cir. 1990) (citation omitted).  Even without academic training in a particular field, "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience."  *Id.*  In his deposition, Dr. Beyer testified that he took a six month basic science course as part of his residency, which covered biomechanics and force dissipation.  He also is a member of the American Association for Automotive Medicine which "speaks about vehicular accidents and resultant injuries," and he reads several journals on the subjects of motor vehicle accidents, the forces involved, and the resultant injuries, which provide him with the training and knowledge necessary to understand concepts of biomechanics and the injuries that can occur following an accident.  Additionally, Dr. Beyer testified that he has been treating patients involved in car accidents for nearly twenty years as part of his orthopedic practice.

Even if the Court were persuaded that Dr. Beyer's experience qualifies him to render an opinion regarding the forces involved in the collision at issue, to the extent that Dr. Beyer explained his methodology, the Court finds it deficient.  The record reflects that Dr. Beyer did not conduct an independent study to determine the forces involved in the collision in this case, nor did he base his opinion on data from comparable events.  Dr. Beyer testified that he based his opinion on studies looking at car to car impacts, not semi trailer on semi trailer impacts.  (Doc. 44-1 at 23:21 - 24:11.)  Moreover, while Dr. Beyer indicated both in his expert report and in his deposition testimony that he had based his opinion upon his personal experience stopping at, and driving by, truck stops, he also admitted in his deposition testimony that he had never seen the actual Flying J truck stop where the collision at issue occurred.  (Doc. 44-1 at 16:2 - 17:2.)  Additionally,

despite Dr. Beyer's deposition testimony that different types of metals would result in different patterns of deformation to the door and hinges of Plaintiff's semi-trailer, he testified that he could not identify with any certainty the kind of metal of the door and hinges of Plaintiff's semi trailer. (Doc. 44-1 at 24:21 - 25:19.)

As stated in *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), "there is simply too great an analytical gap" between the information known about the collision at issue, the semi-trailers involved in the collision, and the site of the collision and the opinion proffered by Dr. Beyer. Therefore, the Court finds that Dr. Beyer's opinion that the collision at issue was a low energy event is not based on reliable principles and methodology and Dr. Beyer may not testify as to the forces involved in the collision.

**Dr. Beyer's Medical Causation Opinion**

Plaintiff also moves to exclude Dr. Beyer's opinion regarding the causation of Plaintiff's injuries because Dr. Beyer did not review any of Plaintiff's pre-injury medical records and spent only seven to ten minutes personally examining Plaintiff. Plaintiff does not challenge Dr. Beyer's qualifications to offer an opinion on medical causation, and only challenges the reliability of the methodology Dr. Beyer employed in making his opinion.

In his expert report, written IME, and deposition testimony, Dr. Beyer opined that Plaintiff's injuries were caused by underlying degenerative disk disease in the cervical and lumbar spine, not the collision, and that at most, the collision had caused a transient aggravation to Plaintiff's cervical spine which would resolve itself within six to eight weeks. (Doc. 43-6 at 4-12, 44-1 at 25:20 - 28:18.) The Court finds that Dr. Beyer's

opinion regarding the cause of Plaintiff's injuries was the product of reliable methodology. Dr. Beyer states that he based this opinion on (1) his examination of Plaintiff, which revealed several positive Waddell signs[1]; (2) the police report, which noted that Plaintiff reported that he had no injury at the time of the collision; and (3) Plaintiff's post-collision medical records, including MRI films taken shortly after the collision. (Doc. 43-6, 44-1 at 28:19 - 32:5.) While Dr. Beyer did not review Plaintiff's pre-injury medical records, Defendant argues that such a review was impossible because Plaintiff never identified his pre-collision medical providers.

The Court finds that Plaintiff's challenges to the factual basis of Dr. Beyer's opinions go to the credibility of his testimony, not the admissibility, and are therefore more properly left for cross-examination. *See Larson*, 414 F.3d at 941. Therefore, the Court will allow Dr. Beyer to testify regarding the causation of Plaintiff's injuries.

---

[1] "Waddell's signs are a group of physical signs . . . in patients with low back pain." *McMurray v. Astrue*, No. 08-5044-CV-SW-REL-SSA, 2009 WL 3052204, *7 n. 4 (W.D.Mo.2009). "They are thought to be indicators or a non-organic or psychological component to pain. Historically they have been used to detect 'malingering' patients with back pain." *Id.* These signs include "[a]xial loading-eliciting pain when pressing down on the top of the patient's head"; "[p]ain on simulated rotation-rotating the shoulders and pelvis together should not be painful . . ."; "[s]uperficial tenderness-skin discomfort on light palpation"; and "[n]onanatomic tenderness-tenderness crossing multiple anatomic boundaries." *Id.* A finding of three signs is considered clinically significant. *Reinertson v. Barnhart*, 127 Fed. Appx. 285, 289 (9th Cir.2005).

**Dr. Beyer's Opinion Regarding Plaintiff's Truthfulness**

Plaintiff also moves to exclude Dr. Beyer's testimony on the grounds that it improperly invades the province of the Court and the jury. Specifically, Plaintiff points to Dr. Beyer's written IME, in which he states:

> Concerning the Waddell's findings today, the great inconsistencies between the original event, the minor energy dissipation in the original event, and the later extravagant complaints that the patient had are worrisome for embellishment and secondary gain. The significant symptoms he later indicated would seemingly preclude him from being able to drive his vehicle safely yet he was able to drive 1200 miles. Initial complaints at most were mild, limited to the cervical spine. To that end, I do not believe this patient suffered a severe injury in the collision. I believe at most, he had a transient aggravation of his neck, and furthermore, the mechanism of his injury is completely implausible, such that he states there were 2 impacts, separated by 60 seconds. When I asked how to explain that, the patient simply could not. (Doc. 43-6 at 11.)

Rule 702 allows an expert to give an opinion when his specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." However, "an expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. . . . Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion." *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) (internal quotations and citations omitted).

In *United States v. Azure*, 801 F.3d 336, 340 (8th Cir. 1986), the Eighth Circuit allowed an expert to testify to patterns of consistency that were typical in the stories of child sexual abuse victims, and to compare those patterns with the story of the child witness in that case. However, the expert was not allowed to make general statements regarding the believability of the witness' story. *Id.* at 341. Similarly, in *United States*

7

*v. Whitted*, 11 F.3d 782, 786 (8th Cir. 1993), the Eighth Circuit allowed an expert to summarize the medical evidence and express his opinion that his medical findings were consistent with the victim's claims of sexual abuse. However, that expert was not allowed to opine that the victim had been sexually abused, because such testimony required the expert to believe the victim's statements, which necessarily required an assessment of the victim's credibility. *Id.*

Upon reviewing Dr. Beyer's report and deposition testimony, as well as the purpose for which Defendants purport to use Dr. Beyer's testimony, it appears that Defendants are using Dr. Beyer's testimony to discuss the truthfulness of Plaintiff's statements and symptoms. Such credibility determinations of Plaintiff are strictly left to the province of the jury, and therefore the Court finds that any general statements by Dr. Beyer regarding the truthfulness of Plaintiff are inadmissible. The Court will reserve ruling as to statements regarding conflicting factual statements made by Plaintiff until the time of trial.

## **Conclusion**

For the foregoing reasons, Plaintiff's motion to exclude the testimony of Defendant's expert Dr. Beyer will be granted in part and denied in part. Dr. Beyer may not testify as to the forces involved in the collision, nor may he testify regarding the truthfulness of Plaintiff's statements and symptoms. However, he may testify regarding the causation of Plaintiff's injuries.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jimmie James Norman Jr.'s motion to preclude the testimony of defendants' expert witness Dr. Craig Beyer (Doc. 43.) is **GRANTED in part and DENIED in part**.

                                                */s/ Audrey G. Fleissig*
                                                AUDREY G. FLEISSIG
                                                UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2011.